IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2005

## STACY ALLEN MELTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Greene County**
**No. 04CR255     James E. Beckner, Judge**

---

**No. E2005-00206-CCA-R3-PC - Filed November 4, 2005**

---

The petitioner, Stacy Allen Melton, appeals from the Greene County Criminal Court's dismissal of his petition for post-conviction relief from his guilty plea to especially aggravated kidnapping, a Class A felony, and attempted second degree murder, a Class B felony.  He contends that his guilty plea was involuntary and that he received the ineffective assistance of counsel.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

Greg W. Eichelman, District Public Defender; and Deanna M. Snyder, Assistant Public Defender, for the appellant, Stacy Allen Melton.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Cecil Clayton Mills, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In this case, the petitioner stabbed his wife and held his six-year-old son at knife-point.  Initially, we note that the parties agreed at the guilty plea hearing to a waiver of an oral recitation of the facts.  Instead, the parties agreed to file a written offense report of the stipulated facts with the trial court.  This written offense report is not included in the appellate record, and the remainder of the record is virtually devoid of the facts of the case.  Thus, we are only able to glean certain details from various factual references to the offenses in the record.   The summary of these references is as follows.

On the day in question, the petitioner went to the home of his ex-wife, the victim of the attempted murder.  He had consumed a jar of moonshine and had also been taking Paxil, an anti-

depressant. The petitioner stabbed his ex-wife in the chest with a kitchen knife, and she fled alone across the street to a neighbor's home. When the police arrived, the petitioner was holding a knife to his six-year-old son's neck. The police held the petitioner at gun-point until he released his son unharmed.

A Greene County grand jury indicted the petitioner for especially aggravated kidnapping, attempted second degree murder, and aggravated burglary. Pursuant to a plea agreement, the petitioner pled guilty to the charges of attempted second degree murder and especially aggravated kidnapping in exchange for the state's dismissing the aggravated burglary charge. The petitioner also agreed to concurrent sentences of eight years at thirty percent for the attempted second degree murder and fifteen years at one hundred percent for the especially aggravated kidnapping. The petitioner signed two formal agreements listing the two charges and the negotiated sentences.

At the guilty plea hearing on May 28, 2004, the trial court informed the petitioner of his constitutional right (1) to a jury trial, (2) to have the assistance of counsel, (3) to call witnesses on his own behalf, (4) to confront and cross-examine witnesses called against him, (5) to have the court issue subpoenas compelling the attendance of witnesses, (6) to remain silent or to testify, and (7) to force the state to prove every element of the crime beyond a reasonable doubt. The trial court explained to the petitioner the elements of the crimes of attempted second degree murder and especially aggravated kidnapping. The trial court also presented the ranges of punishment for these offenses.

On November 1, 2004, the petitioner filed a petition for post-conviction relief alleging that his guilty plea was involuntary and that he received the ineffective assistance of counsel. After appointment of counsel, the petitioner filed an amended petition alleging the same two grounds.

At the post-conviction hearing, the petitioner testified that he did not understand that a one hundred percent release eligibility date meant that he would serve the entire sentence. He explained that at one point during the guilty plea hearing, he was silent as to whether he understood the sentence length. He said he only pled guilty because he did not want to put his family through any trouble. The petitioner also said that he was taking Paxil for depression and that he requested a mental evaluation but that his attorney did not see a reason for an evaluation. The petitioner said he had a friend in law enforcement who told him that the state might be willing to offer the petitioner a plea deal of ten years. The petitioner said that he told his attorney about this rumored offer, that his attorney asked him what he wanted to do if the prosecuting attorney would not offer this deal, and that he replied that he would take the fifteen-year plea agreement rather than go to trial. The petitioner maintained, though, that he felt pressured into accepting the guilty plea.

On cross-examination, the petitioner acknowledged he did not tell the trial court that he had taken Paxil within twenty-four hours of his plea hearing. He acknowledged he told the trial court that he was satisfied with his attorney and that he understood his agreement with the state. The petitioner said his attorney told him that the prosecuting attorney would not allow less than a fifteen-year sentence. However, the petitioner maintained he did not understand what "one hundred

percent" meant despite his ongoing discussions with his friend in law enforcement and his G.E.D. education.

On redirect examination, the petitioner restated that he remained silent when the trial judge first asked him if he understood that the one hundred percent release eligibility date meant he would serve the entire sentence. However, on recross-examination, the petitioner admitted that the trial judge asked him later if he understood the total sentence would be fifteen years with a one hundred percent release eligibility date and that he replied that he understood the sentence.

The petitioner's attorney testified that he advised the petitioner not to expect to receive a sentence of less than fifteen years if he went to trial unless he was acquitted on both charges. The petitioner's attorney said the petitioner was initially hesitant to accept the plea agreement because of the requirement that he would serve the entire fifteen-year sentence. The petitioner's attorney said that he was "very careful" to explain to the petitioner that he would serve the entire sentence and that he saw no indication whatsoever that the petitioner did not understand. The petitioner's attorney said that at the petitioner's request, he asked about the rumored ten-year offer but that the prosecuting attorney remained adamant that the fifteen-year sentence was the minimum offer. The petitioner's attorney said the petitioner then agreed to the plea arrangement.

On cross-examination, the petitioner's attorney said he advised the petitioner that voluntary intoxication was not a defense under Tennessee law. He said he told the petitioner that he may have suffered adverse effects from the Paxil but that his voluntary consumption of a jar of moonshine practically negated this defense option. The petitioner's attorney also said the petitioner never requested a mental evaluation. The attorney said, though, that he would have pursued any potential mental defense but that none was applicable based upon the petitioner's consuming a jar of moonshine. The petitioner's attorney said he explained to the petitioner all of the rights he would be waiving if he chose to plead guilty.

Following the post-conviction hearing, the trial court dismissed the petition for post-conviction relief. Regarding the voluntariness of the plea, the trial court found that the petitioner's testimony that he did not understand that one hundred percent meant the entire sentence was "simply not credible." Regarding the ineffective assistance of counsel, the trial court found that "discovery was complete, that all possible defenses were explored, that every option and possible defense and negotiation was explained completely to the petitioner, that all options were discussed completely and fully; and that it was the petitioner's informed decision to plead guilty."

On appeal, the petitioner contends that the trial court erred in dismissing his petition for post-conviction relief. He claims that his guilty plea was involuntary and that he received the ineffective assistance of counsel. The state contends that the petitioner's plea was voluntary and that he did not receive the ineffective assistance of counsel. We agree with the state.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, we are bound by the trial

court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

## I. INVOLUNTARY GUILTY PLEA

The petitioner contends that his plea was involuntary. He claims that based upon his lack of education and familiarity with the legal system, he did not understand that he would be required to serve one hundred percent of his sentence. He argues that his silence during the guilty plea colloquy supports his contention that his guilty plea was involuntary. The state contends that the petitioner's plea was voluntarily entered as evidenced by his oral and written acceptance of the plea. We agree with the state.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. See State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). The circumstances include

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." Id.

The trial court is charged with determining if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999); Blankenship, 858 S.W.2d at 904. In Boykin v. Alabama, the United States Supreme Court clearly enunciated that certain constitutional rights are implicated in a plea of guilty, namely, the right to a trial by jury, the right to confront witnesses, and the privilege against compelled self-incrimination, and that it would not presume a waiver of these three important rights from a silent record. 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Rule 11(c)(3) of the Tennessee Rules Criminal Procedure outlines advice to be given a defendant entering a plea and explicit procedures for ensuring on the record that pleas of guilty are voluntarily and understandingly

made.  However, only the constitutionally grounded rights stated in <u>Boykin</u> are addressable, per se, under the Post-Conviction Procedure Act.  <u>See</u> <u>State v. Prince</u>, 781 S.W.2d 846, 853 (Tenn. 1989).

The following colloquy relating to the petitioner's claim that his guilty plea was involuntary occurred at the petitioner's guilty plea hearing:

> THE COURT:  Can you read and write?
> [THE PETITIONER]:  Yes, sir.
> THE COURT:  Without any difficulty?
> [THE PETITIONER]:  Yes, sir.
> THE COURT:  Anything about your health, physical, or mental condition that would cause you not to understand what we're doing today?
> [THE PETITIONER]:  No, sir.
> THE COURT:  Have you had any alcohol or drugs in the last [twenty-four] hours?
> [THE PETITIONER]:  No, sir.
> THE COURT:  Do you understand what you're charged with?
> [THE PETITIONER]:  Yes, sir.
>
> . . . .
>
> THE COURT:  For especially aggravated kidnapping . . . it does carry with it a one hundred percent release eligibility date.  You have to serve all the sentence.  Do you understand that?
> [THE PETITIONER]:  [SILENT]
> THE COURT:  Is this your signature on this paper, waiving your rights and pleading guilty to those charges?
> [THE PETITIONER]:  Yes, sir, it is.
> THE COURT:  Have you read it, and do you understand it?
> [THE PETITIONER]:  Yes, sir.
>
> . . . .
>
> THE COURT:  Are you pleading guilty because you are guilty?
> [THE PETITIONER]:  Yes, sir.
> THE COURT:  Do you do so freely and voluntarily and of your own free will?
> [THE PETITIONER]:  Yes, sir.
> THE COURT:  Any force or threats of any kind used against you to cause you to plead guilty?
> [THE PETITIONER]:  No, sir.

. . . .

> THE COURT: Do you understand correctly that . . . for the attempted second degree murder there will be a sentence of eight years, for the especially aggravated kidnapping it will be a sentence of fifteen years; those sentences are to be served concurrently with each other so you will have a total effective sentence of fifteen years with a one hundred percent release eligibility date. Is that your complete agreement and what you ask me to approve?
> [THE PETITIONER]: Yes, sir.

We conclude that the petitioner has failed to carry his burden of proving by clear and convincing evidence that his guilty plea was involuntary. The record reflects that the petitioner acknowledged his sentence would be fifteen years at one hundred percent in his negotiated plea document and at the guilty plea hearing. Further, the petitioner's attorney testified at the post-conviction hearing that the petitioner originally hesitated to plead guilty because he did not want to serve a term of fifteen years in confinement. He said, however, that the petitioner understood the terms of the agreement. The petitioner is not entitled to relief on this issue.

## II. THE INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner next contends that he received the ineffective assistance of counsel because his attorney did not investigate and develop all substantial defenses and did not continue negotiations with the prosecuting attorney to reach a better plea offer. The state contends that the petitioner did not receive the ineffective assistance of counsel. We agree with the state.

When a petitioner claims that the ineffective assistance of counsel resulted in a guilty plea, the petitioner must prove that counsel performed deficiently and that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland v. Washington, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

At the post-conviction hearing, the petitioner's trial attorney testified that he explored the possibility of asserting a mental defense but ultimately concluded such a defense was not viable given the petitioner's consumption of a jar of moonshine. The attorney also testified that after the petitioner informed him of the state's potential willingness to extend the petitioner an offer of a ten-year sentence, he approached the prosecuting attorney to determine whether the rumor had merit. He said, however, that the prosecution was unwilling to consider any negotiated plea agreement with

a sentence of less than fifteen years.  We conclude the evidence does not preponderate against the trial court's finding that the petitioner's attorney's performance was not constitutionally deficient. The petitioner is not entitled to relief on this issue.

## CONCLUSION

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
JOSEPH M. TIPTON, JUDGE